FILED

CASE NO. 8:21 cv 195 T 02 JSS

# UNITED STATES DISTRICT COURT

## for the

# MIDDLE  DISTRICT OF FLORIDA

# TAMPA DIVISION

MERCHANT, ALIA
(PLAINTIFF)


V.


UNITED STATES DEPARTMENT OF EDUCATION,
OFFICE OF CIVIL RIGHTS, ATLANTA DIVISION
& SECRETARY OF EDUCATION

---

### COMPLAINT
### AND
### INJUNCTION RELIEF

(28 U.S.C. SECTION 1332; DIVERSITY OF CITIZENSHIP AND 28 U.S.C
1331; FEDERAL QUESTION )


PLAINTIFF

ALIA MERCHANT
4409 WEST VARN AVENUE
TAMPA, FL 33616
ALIAMERCHANT51@GMAIL.COM

Pro Se

January 26, 2021



1

## I.    PARTIES TO THIS COMPLAINT

### A.  THE PLAINTIFF

ALIA MERCHANT (**former legal name: Nausheen Zainulabeddin**)

4409 West Varn Avenue

Tampa, FL 33616

ALIAMERCHANT51@GMAIL.COM

### B.  DEFENDANTS

#### DEFENDANT NO. 1

UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF CIVIL RIGHTS. ATLANTA DIVISION

61 FORSYTH STREET S.W., SUITE 19T10

ATLANTA, GA  30303-3104

404-974-9406

OCR.ATLANTA@ED.GOV

#### DEFENDANT NO. 2

ELIZABETH (BETSY) DEVOS

SECRETARY OF EDUCATION

400 MARYLAND AVENUE, SW

WASHINGTON, DC 20202

BETSY.DEVOS@ED.GOV

**COMPLAINT**

## II.    BASIS FOR JURISDICTION

### A.  SUMMARY

1. This Court has jurisdiction over claims alleged in this complaint pursuant to USC 701-706 (Administrative Procedure Act ("APA")), 28 USC 2401 (a), 28 U.S.C. 1331 (federal question), 28 USC 1332, and 28 USC 2201, 28 USC 2202. ED's final agency action was rendered on December 16, 2015 and constitutes as a final agency action within the meaning of the APA, 5 U.S.C 701-706. Therefore, the final agency decision for the case investigated is judicially reviewable. Plaintiff is a "person" within the meaning of the APA, 5 U.S.C. section 551 (2) and is authorized to bring this suit under the statute 5 U.S.C. 701-706. Venue in this judicial district is proper under 28 U.S.C. because the plaintiff resides in this jurisdiction and cause of action arose in this judicial district.

### B.  28 USC 1331 and 28 USC 1332

2. This court has justification to hear this case under diversity jurisdiction 28 U.S.C section 1332 and federal question jurisdiction 28 U.S.C. 1331.  Diversity jurisdiction to which the citizen of this state sues the citizen of another and the amount at stake is more than $75,000. The court has subject matter jurisdiction over the action pursuant to 28 USC 1331 because it is a case arising under federal law, Title II of ADAAA 2008. 28 C.F.R. 35.190(b)(2) and 42 U.S.C. 12101-12213.[1]

---

[1] Ali, R. (2012). U.S. Department of Education, Office of Civil Rights Dear Colleague Letter. Retrieved from:

### III.    LEGAL BACKGROUND

3.  Pursuant to 5 USC 701-706; congress has waived sovereign immunity to the relief
    requested. The plaintiff's complaint is ripe for judicial review as plaintiff has exhausted
    her administrative remedies as required by the United States Department of Education,
    Fedloan Servicing Master Promissory Note under Title IV.  28 U.S.C. 1087e(m). Title IV
    loan services have a direct contractual relationship with the Department when servicing
    the loans held by the Department as part of the Federal Family Education Loan ("FFEL")
    Program. Plaintiff has signed MPN for the following years, 2008-2013; and 2015-2018 to
    which she has requested tuition refund for years 2009-2010 and 2011-2012; and interest
    as accrued from 2008 to present. The Department of Education has supervisory authority
    over Title IV servicers.

#### Constitutional Standing

4.  Defendant's actions have led to irreparable injury and the case gives rise to controversy
    within the meaning of Article III of the U.S. Constitution. Plaintiff has an Article III
    standing to assert APA claim under the Due Process Clause of the Fifth Amendment. Due
    process is necessary when personal rights and property interests are threatened by the
    governmental action under question. The arbitrary and capricious act of removing section
    306 option in 2015 U.S. Department of Education's OCR manual of the rule to submit an
    appeal of the agency decision who had conducted an investigation and determined the
    averse findings contrary to supported evidence before the agency to the US DOE
    Headquarter office as that had been previously the option; violated the APA and the Fifth
    Amendment's Due process clause. Plaintiff requests this court to direct ED to provide
    students with the decision-making process that minimizes the risk of erroneous denials to

review the agency's erroneous findings and meaningful opportunity to review the

agency's findings. For without the effective safeguard including informing and giving the

notice to the public of the rule change to comment and contest the removal of the rule of

the right to submit an appeal to the National Headquarter office in D.C. in section 306

from the OCR manual; the agency resorted to ministerial facts leading to faulty legal

conclusions as to final agency action that had a detrimental and collaterally grave effect.

## INTRODUCTION

5.  Plaintiff brings forth this complaint within <u>six years pursuant to Administrative</u>

    <u>Procedure Act 5 USC 701-706</u> under the exhaustion of administrative remedies and 28

    USC 2401 six-year statute of limitations from the date the <u>right of action accrues</u> for

    agency rendered its final agency decision on December 16, 2015. The complaint was

    accepted for investigation against the University of South Florida, Morsani College of

    Medicine ("USF MCOM") for a violation pursuant to Title II of ADA Amendment Act

    2008 and Section 504 of Rehabilitation Act, 29 U.S.C. 794; 42 USC 2000d-1 for last

    denying her petition for readmission on August 28, 2014 (See FOIA Response no. 17-

    02164F). She requested USF MCOM's petition for readmission committee for:

    1) Reinstatement to USF MCOM

    2) Reimbursement of tuition under Fedloan Servicing Master Promissory notes,

    3) Correction for interest accrued due to administrative error from 2010 to 2013

    4)  Expungement of her failing grades in her transcripts from 2010 to 2013 due to

       administrative error

    5) Accepting her appeal for Doctoring II and EBCR II in the year 2013

    6) Eligibility to take the United States Medical Licensing Exam

(Appendix B, pp. 3-16; Appendix C, pp. 17-21; Appendix D, pp. 22-28; Appendix E, pp. 29-41; Appendix F, pp. 42-66).

### A. Cause of Action, 28 USC 2401

6.  Federal law determines the <u>accrual date</u>. A claim accrues when the plaintiff has "a complete and present cause of action", or "when the plaintiff can file suit and obtain a relief". In *Piotrowski v. City of Houston*, the court stated that

> "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." A plaintiff's awareness encompasses two elements (1) the existence of injury; and (2) causation, that is, the connection between the injury and the defendant's actions." A plaintiff need not know that she has a legal cause of action' she needs know only the facts that would ultimately support a claim. Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further."

*Wind River* court stated that a case turns on the date of accrual and focused on that point. In such context it focused on the statutory and constitutional challenges; to which it governed accrual for administrative challenges. *Wind River Mining Corp. v. United States*, 946 F2d 710 (9th Cir. 1991)[2]. The six years of agency application to the disputed decision is in reference to the challenger. The challenges are more interested in the person . It is based on the premises of ultra vires, i.e. beyond legal authority; because the agency took action before it as discovered regarding its state of affairs. Thus, the newly discovered framework is applicable in section 2401(a); to which the *Wind River Court* challenge was based on the statutory authority in which the accrual initiated until the final decision was applied to the plaintiff in 2015; thus, the suit filed is timely[3].

---

[2] Note called "Wind River Court".
[3] Kenrick, J. (2017). (UN)Limiting Administrative Review: Wind River, Section 2401(A), and the Right to Challenge Federal Agencies. *Virginia Law Review Association.*

**B. Title II of Amendment Act 2008 (statutory standing)**

7. Pursuant to congressional intent and purposes for enacting the amendment to Title II of

   ADAAA in 2008. US DOE Guidance Letter declared the provision, to which the agency

   changed its position as the interpretation of Title II of ADA and shift its position in

   alignment to congress intent under ADAAA 2008. 84 Fed Reg. 30, 505. ADAAA created

   a *new right* for individuals with disabilities to which prospective relief is available under

   the Federal Catchall Statute of Limitations. Congress added specific rules of construction

   regarding the definition of disability, which provides:


   (C) An impairment that substantially limits one major life activity need not limit other

   major life activity when active.

   (D) The determination of whether an impairment substantially limits a major activity

   shall be made without regard to ameliorative effects of mitigating measures.

42 U.S.C. 12102(4)

8. The objective of Congress to enact ADAAA in 2008 was that it wanted to prohibit

   discrimination by aligning the ADA with other civil rights laws. It accomplished that by

   eliminating the language in the ADA  that had prohibited discrimination of an individual

   " with a disability because of disability" and replaced it with a simple prohibition on

   "discrimination on the *basis* of disability" [distinguishing that discrimination was on the

   basis of personal characteristics of the disability in ADAAA and not whether that

   characteristic exists]. H.R. Rep. No. 110-730, at 16 (2008). ADAAA overturn the

   Supreme Court decision in *Sutton v. United Air Lines,* which held that people with

   disabilities were not eligible under the ADA if their conditions could be mitigated by

medication, assistive technology and equipment, or learned behavioral adaptations 527

U.S. 471, 119 S. Ct. 2139 (1999). The bill clarifies major life activities that include

working, communicating, concentrating, thinking, reading, and other activities of central

importance. Hence, the language in ADAAA shifted away from proving that the issue is

whether there is the presence of a "disability" to the act of discriminatory conduct.

### C. <u>CHALLENGED PROVISION OF THE PROCEDURAL RULE,</u>

#### US Department of Education Case Processing Manual, section 306

9.  The case processing manual of the Department of Education for handling the complaint

    included the option to submit a final appeal of the agency's decision to the National

    Headquarter office if the findings in the record are controversial and would overturn the

    agency's decision. <u>In 2015, the case processing manual removed the option to submit a</u>

    <u>final appeal to the National Headquarter office and the final stage was at the level of the</u>

    <u>District office, i.e. office director.</u>


The current Office of Civil Rights, Department of Education's Department of Education Case

Processing Manual states:


> "a civil action in Federal court can be filed only after the complainant has exhausted
> administrative remedies. Administrative remedies are exhausted when either of the
> following has occurred:
>
> 1. 180 days have elapsed since the complainant filed the complaint with OCR and OCR
> has made no findings; or

2. OCR issues a finding in favor of the recipient. If this occurs, OCR will promptly notify the complainant and will provide additional information about the right to file for injunctive relief."[4]

10. Judicial review with substantial evidence provided to the local agency allotted from the former rule by headquarter office ***would have given*** oversight to the local agency and its operations to ensure that congressional intent and new provisions to the amendment are implemented and enforced. <u>The substantial evidence provided to the agency was sufficient to which a reasonable person to infer that the reliance on testimony from USF Staff was a perjured testimony and was primarily used to play fast and lose at the quasi-judicial forum.</u> Thus, the decision of the agency findings at the local level should have the opportunity to be reviewed by the National Headquarter office especially when stakes were high, i.e. injunction to a medical career and with nearly $200,000 fed loans in 08/2014, omissions, misrepresentations and errors were of substantial concern.

11. Plaintiff had submitted the appeal of the agency decision rendered on February 9, 2015, to the local district office at OCR of Atlanta and to the National Headquarter office in District Columbia on April 9, 2015, within 60 days. The former 2014 case processing manual provided an option to either submit the appeal to the National Headquarter office or the local district office. Despite the fact there was a removal of the option in section 306 of the 2015 OCR Manual CPM; the plaintiff submitted to both offices by the 60-day deadline (local agency: Atlanta office and to the headquarter office). However, since the rule had been changed in 2015's US DOE Case processing manual of section 306; no

---

[4] Department of Education, Office of Civil Rights complaint processing procedures. Retrieved from: https://www2.ed.gov/about/offices/list/ocr/complaints-how.html

action was taken by the NHQ office. The local district office submitted the final agency decision eight months later whereas, the standard time to reply to the appeal is 60 days. From the face of the extensive time to respond to the appeal; the complainant was aggrieved from the agency's action. Plaintiff was deprived of due process under the fifth amendment of the necessary checks and intervention from the NHQ office as was the former standard protocol.

12. The removal of the statement from section 306 to appeal to the headquarter office of the local agency's findings and decision from the OCR Manual for the year 2015 was not in accordance with the law. The removal was beyond statutory and regulatory authority, in violation of the Administrative Procedure Act. The change in section 306 was arbitrary, or capricious, or both due to a violation of the Administrative Procedure Act. The removal of the option to submit the appeal of the agency findings from the investigations and legal conclusions and decision without complying with notice and comments requirements violated the APA.

13. Acknowledging the future costs of litigation; she asked her attorney who specialized in special education law to file two demand letters to the Univ. of South Florida for an early resolution. The University denied both of her demand letters dated May 2015 and June 2015[5]. Hence, the complainant was left with no option but to resort to federal court litigation and has exhausted all administrative remedies before bringing this cause of action for review.

14. The ADAAA had created a new cause of action; hence the lens as to the enforcement of the congressional intent was not taken under consideration. In *Clark v. Iowa City,* the

---

[5] The University had also denied an early resolution offer by US DOE OCR in September 2014.

court held that absence of any indication in a statute, there can be the presence of a result to which the statute creates a cause of action to which it accrues at one time to calculate when the statute of limitation begins to run, but another time to bring the suit. 87 U.S. (20 Wall.) 583, 589 (1875).

15. In *New York v. Dep't of Justice,* the court held that it will not lightly conclude that an agency action should be overturned as arbitrary and capricious because the agency entirely failed to consider an important aspect of the problem. 951 F.3d 84, 122 (2d Cir. 2020). Implementation of a provision to the statute by the agency is not based on consideration of cost-benefit analysis, but the decision is based on the consideration of the final regulation, legal policy to effectuate the Title's objectives.

16. Furthermore, Section 504 requires agencies that provide federal funding to apply remedies, procedures, and rights outlined in Title VI to the rights of persons with disabilities. 29 U.S.C. 794a(a). DOE adopted the Title VI rights and procedures, including 34 C.F.R. 100.7, for complaints of violations of Section 504. 34 104.61.

### D. Administrative Procedure Act, 5 USC 701-706

17. A party's right in an administrative context is based on the standing and accrual of the legal claim. The standing has two components: (1) constitutional and (2) statutory. It is well established by court decisions and agency-specific statutes that "the requirement of the finality of administrative action and exhaustion of administrative remedies as a prerequisite of judicial review.

18. Under the Administrative Procedure Act ("APA") 5 USC 701-706 a person has a right to sue a federal agency who is "adversely affected or aggrieved" by a federal agency's

decision and has a cause of action against the agency under the APA. When there are no

specific statute limitations, courts have held a six-year statute of limitations is applicable.

### E.  Statutory standing: 28 U.S. Code § 2401

28 U.S. Code § 2401 states that the time for commencing an action against the United States:

**(a)**
Except as provided by chapter 71 of title 41, every civil action commenced against the
United States shall be barred unless the complaint is filed within six years after the right of
action first accrues. The action of any person under legal disability or beyond the seas at
the time the claim accrues may be commenced within three years after the disability ceases.

19. U.S. Department of Education Fedloan Service recipients who have signed master

promissory note require exhaustion of grievance procedures and administrative remedies

before challenges of enforcement actions and judicial review. Thus, the controversy must

be "ripe" for the federal court decision. 28 USC 2401. There is no specific statutory

deadline for civil actions against the United States Department of Education, thus must be

filed within six years of when the claim accrued or originated. The prudential

considerations govern the doctrine of ripeness under Article III limitations.

### F.  Accrual

20. Under the *Wind River Doctrine*, the right of action first accrues as soon as he or she has

suffered a legally cognizable injury and is entitled to seek legal relief. The court has

deemed that it is the plaintiff's responsibility to pursue their rights diligently. In *Wind

River,* the court interpreted that a party's right to bring the claims "first accrues" as soon

as the agency has acted. This is true even before there is legally cognizable injury accrual

means that a party's right of action cannot accrue until he or she has been harmed by the

defendant. In the *United States v. Sams,* the court held that a claim first accrues when all

the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action. 521 F.2d 421, 429 (3rd Cir. 1975).

21. Section 2401 (a) is a statute of limitation that applies to which Congress has not provided a time limit for a claim at issue, to which it includes agency action brought under the APA. *Peminger v. Sec'y of Veterans Affairs*, 517 F.3d 1299, 1307 (Fed Cir. 2008). The collection of cases from sister circuits have held that actions for judicial review under the APA are subject to the statute of limitations in 28 USC 2401(a). The APA grants a right of action to any person who has suffered a legal wrong or is adversely affected or aggrieved by the federal agency.

## G. Article III constitutional standing

22. Plaintiff has constitutional standing for the alleged legal claims seeking judicial enforcement of a duty. The constitutional standing stems from Article III's restriction of the federal judicial power. *In Lujan v. Defenders of Wild Life*, the court held that for the Article III standing, it requires the plaintiff to have (1) concrete and particular injury (2) caused by the defendant's conduct (3) redressed by a favorable decision. 504 U.S. 555, 560-61 (1992). The constitutional standing is when the regulation that is invalid, unconstitutional, arbitrary, and capricious injures the party. Procedures are designed to protect constitutional standing that must be based on harm to a concrete interest. The balance between evaluating procedural violation tests enables to meet the root of causation versus substantive agency action is evaluated with the same respect to the degree of injury.

## H. Final agency action

23. The court has established the wrinkles of standing and cause of action under APA, to which the court may review "final agency action". In *Bennett v. Spear*, the Supreme Court has stated that the finality concerning two requirements: (1) action must mark the "consummation" of the agency's decision-making process (2) action must be done to which rights or obligations have been determined and the legal consequences will flow. 520 U.S. 154, 177-78 (1997). The finality overlaps the standing of the injury in fact element to which the plaintiff is affected by regulation. In *Harris v. FAA*, the court held that the claim accrues upon final agency action. 353 F.3d 1006, 1009-10 (D.C. Cir. 2004). The two statutes are linked, APA and Section 2401(a). The section does not distinguish between procedural and substantive challenges or between 'policy' or 'ultra vires' challenges.

24. The court has also held that final agency action to which it has not abided by the congressional intent is in essence inaction, yet still considered final agency action, per se when the agency carrying out congress's duties fails to approve the status quo, as opposed to, inability to agree how to alter the status quo and indifferent to it, or even political cowardice. *Johnson v. Transp. Agency*, 480 U.S. 616, 672 (1987).

## I.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

25. Pursuant to the administrative requirement to exhaust administrative remedies for financial aid recipients. Exhaustion is a prerequisite to judicial review only when expressly required by statute or when the agency rule requires appeal before review. 34 C.F.R. 685.219 (e)(3). The claims are ripe for judicial review under 28 USC 2401.

26. In *Ohio Forestry Association, Inc. v. Sierra Club*, the court determined the fitness of issues for judicial decision and hardship and whether it is ripe for judicial review. 523 U.S. 726 (1998). Three considerations are sought: (1) whether the delayed review would cause hardship to the plaintiff (2) judicial intervention would inappropriately interfere with further administrative action (3) whether the courts would benefit from further factual development of the issues presented. In *Cable TV Fund 14-A v. City of Naperville*, the court held the ripeness doctrine is primarily concerned with preventing the courts from intervening in agency action prematurely, thus protecting agencies from judicial interference until the decision has been finalized.1997 U.S. Dist. LEXIS 7336 (N.D. Ill). Plaintiff has exhausted administrative remedies in accordance with contractual stipulation stated as per Master Promissory Note for US Department of Education, Fedloan Servicing.

Office of Civil Rights, Department of Education's Department of Education Case Processing Manual states that:

> "a civil action in Federal court can be filed only after the complainant has exhausted administrative remedies. Administrative remedies are exhausted when either of the following has occurred:
>
> 1. 180 days have elapsed since the complainant filed the complaint with OCR and OCR has made no findings; or
>
> 2. OCR issues a finding in favor of the recipient. If this occurs, OCR will promptly notify the complainant and will provide additional information about the right to file for injunctive relief."[6]

---

[6] Department of Education, Office of Civil Rights complaint processing procedures. Retrieved from: https://www2.ed.gov/about/offices/list/ocr/complaints-how.html

## PROCEDURAL HISTORY AND FACTS

27. Plaintiff was dismissed from Univ. of South Florida, Morsani College of Medicine ("USF MCOM") on March 13, 2013 and filed an appeal to the Appeal's committee and the Dean; the final decision of denial was rendered on May 28, 2013.

28. She filed an additional appeal and was accepted by the Vice Dean of USF MCOM Student Affairs and the decision was rendered on October 25, 2013.

29. She exhausted her final administrative remedy at the university to which she filed her petition of readmission on May 28, 2013; as allowed by the University from one year of dismissal. The decision by US MCOM was rendered on August 28, 2014.

30. Plaintiff filed a complaint to US DOE OCR on August 30, 2014, for discrimination under Title II ADA and section 504 of the Rehab Act. The complaint was accepted for investigation on September 25, 2014.

31. The agency concluded its investigation against Univ. of South Florida, Morsani College of Medicine, and rendered the decision in a letter Feb 9, 2015 (Appendix B, pp. 3-16; Appendix C, pp. 17-21; Appendix D, pp. 22-28).

32. Plaintiff filed her appeal to US DOE OCR of Atlanta and US DOE OCR National Headquarter Office in District Columbia for the decision rendered by OCR on 2/08/2015 within 60 days of filing the appeal on 04/08/2015. No response was received by the US DOE OCR National Headquarter office. Plaintiff received a general denial letter beyond 60 days from US DOE OCR Atlanta Office Director as the final agency decision on December 16, 2015, in response to her appeal (Appendix A, p. 2).

33. Plaintiff's attorney filed a case at the state court in January 2016 and was transferred to federal court, Florida Middle District Court, Case no. 8:16-cv-00637 on March 17, 2016, under 28 USC 1331, and 28 USC 1332.

34. On March 16, 2017, the plaintiff filed for a Federal loan discharge with the U.S. Department of Education Fedloan Servicing for a signed Master Promissory Notes from 2009-2013. Plaintiff also appealed the decision of no action taken by US DOE regarding her Fedloan discharged and with that intention pursued judicial remedy at the Federal Court of Claims, 17-1955; filed December 13, 2017, under the Tucker Act and Contract Dispute Act. Plaintiff has exhausted all available administrative remedies under the cause for her student loans and has filed for chapter 7 bankruptcy at the United States Bankruptcy Court of Southern District of Texas, 20-35864.

35. The Florida Middle District Court rendered the judgment of the claims in accordance with the state law to which statute of limitations had expired; on April 19, 2017.

36. Plaintiff filed a motion for reconsideration under federal question jurisdiction 28 USC 1331 in May 2017 bringing the evidence under collateral estoppel and equitable tolling to review final agency decision for OCR case no. 04-14-2487 rendered by US DOE OCR Office Director dated December 16, 2016. **No action was taken by the court in regards to reviewing the final agency decision**. Before bringing the suit, the plaintiff had diligently pursued University grievance procedures and requirements of US DOE Master Promissory Note Fedloan Servicing contractual agreement from 2013-2015. In motion for reconsideration, the Judge without jurisdiction; denied reviewing factual findings from the final agency decision for OCR 04-14-2487. The facts rendered by the agency contradicted the facts determined for the *case Zainulabeddin v. Univ. of South Florida*

17

*Board of Trustees* at the Florida Middle District Court of Tampa, Case no. 8.2016-cv-00637. Nevertheless, the motion for reconsideration was denied.

37. Plaintiff filed an appeal at the Eleventh Cir. under Federal question jurisdiction, 28 USC 1331 and 28 USC 1332, and also filed a motion for joinder to US DOE OCR of Atlanta. No action was taken by the US DOE OCR of Atlanta.

**38. Plaintiff also gave notice via US Postal Mail to US DOE OCR of Atlanta of claims under Administrative Procedure Act, 701-706 dated May 25, 2017, that are relevant to this present case. She also requested US DOE to serve as a joinder regarding sole reliance on the perjured testimony from USF MCOM Staff in regard to fact finding in her appeal at the Eleventh Cir., case no. 17-11888. No action was taken.**

39. Plaintiff submitted FOIA request no. 17-02164F on July 12, 2017, in support of her appeal for the Eleventh Cir., 17-11888 due on September 5, 2017. Her FOIA request Fee waiver was granted on August 11, 2017. The U.S. Department of Education responded to her FOIA request on August 30, 2017 (Appendix K).

40. The Eleventh Cir. denied her request for de novo review under federal statute of limitations, i.e. Catchall under ADAAA 2008, 28 USC 1331. Her Eleventh Cir. appeal requesting to review final agency action and FOIA response was denied (Case no. 17-11888, 17-12134, 17-12376).

41. Appellant filed additional evidence discovered during litigation with the US DOE for the pretextual cause of action discovered under Title VI for her OCR Case no. 04-14-2487. The additional evidence was received and accepted by the U.S. Department of Education, Headquarter District Columbia office, and Secretary of Education, Betsy Devos letter on October 25, 2018. The National Headquarter office acknowledge the merits of the

additional findings and was forwarded to the US DOE OCR of Atlanta. No action was taken by the US DOE OCR of Atlanta office. The same additional evidence was also presented to Eleventh Cir. In her Petition for panel rehearing. The Petition for panel rehearing was denied (Appendix J, pp. 184-195).

42. **For the reasons stated in Count III, 5 USC 705, in no. 69 (D); emergency injunction (judicial efficiency and economy): Plaintiff exercise due diligence to resolve the situation amicably. Before** filing her Writ of Certiorari to the US Supreme Court, Case no. 18-8305 for denial of Petition for Panel Rehearing at the Eleventh Cir. 17-11888 to review final agency action; she pleaded with the University and the US DOE OCR for mediation and/or arbitration. Appellant received no response and the University canceled her request for a meeting with the USF MCOM Counsel on March 25, 2019. At the US Supreme Court, the plaintiff's Petition for Writ Certiorari questions was accepted for review, but the petition was denied on May 13, 2019. Despite the respect for judicial efficiency; New counts could not be added on appeal under collateral estoppel doctrine and federal question jurisdiction Therefore, she brings this instant case.

43. Appellant contacted US DOE OCR in accordance to the fiduciary duty of her Fed loans and the assigned attorney at the Federal court of Claims from January 2019 to June 2020; to resolve this amicably. There was no resolution.

44. In regards to resolve the refund of her Federal loans for the administrative error from 2010-2012, collateral damages, and accrued interest; the plaintiff filed a suit at the Federal Court of Claims, Case no. 17-cv-1955 due to denial of Borrower Defense claims in her Fedloan discharge application to Fedloan Servicing on August 2017. The case was

dismissed **without prejudice** due to lack of subject jurisdiction in October 2018[7]. The case was not ripe for judicial review due to the pendency of the appeal at the Eleventh Cir.

## IV. STATEMENT OF FACTS

45. Plaintiff filed a complaint to the United States Department of Education, Office of Civil Rights on August 29, 2014, for denying her petition of readmission dated May 28, 2014, due to violation under Section 504 and Title II of ADA, OCR case no. 04-14-2487 (Appendix B, pp. 3-16; Appendix C, pp. 17-21; Appendix D, pp. 22-28).

46. The US DOE accepted the complaint for investigation on September 25, 2014. The agency concluded its investigation against Univ. of South Florida, Morsani College of Medicine on Feb 9, 2015 (Appendix B, pp. 3-16; Appendix C, pp. 17-21; Appendix D, pp. 22-28). Plaintiff filed her appeal for the decision rendered by OCR on 2/08/2015 within 60 days of filing the appeal on 04/08/2015. The OCR of Atlanta Director rendered the final agency decision on December 16, 2015, in response to her appeal.

---

[7] Appellant filed a petition of review of US DOE OCR decision, 04-14-2487 to the Federal Cir., 17-2083 on June 2017, and request for joinder. Fed Cir. Denied her request for appeal due to lack of subject matter jurisdiction. She filed a new suit at the Federal Court of Claims, 17-1955 on December 13, 2017 for reimbursement of tuition for Fedloan Servicing Master Promissory Note under Tucker Act; APA and FTCA--Notice of Directly related case 40.2 was filed and was initially acknowledged by Judge Sweeny at the Federal Court of Claims in October 2018. The court dismissed the case due pending litigation at the Eleventh Cir. Thus, the case was dismissed without prejudice in October 2018. Appellant requested to reopen the case on May 12, 2020, and requested to put weight on her other counts, APA and FTCA since the urgency of her contract dispute act and Tucker Act were no longer applicable. The Judge denied reopening the case and stated to open the case runs from the date filed at the federal court of claims and not pursuant to notice of directly related case rendered on May 13, 2019. The decision of denial to reopen the case was rendered on June 2020, 17-1955 at the Federal Court of Claims. **Thus, this instant cause of action has not been tried in any court, i.e. APA claims 701-706; or in any quasi-judicial forum.** For collateral damages associated with litigation and the cause of action; the plaintiff filed chapter 7 bankruptcy on December 9, 2020.

47. Administrative Procedure Act 5 U.S.C. 705 provides subject matter to this case for defendant's alleged negligence in denying injunctive relief to take United States Licensing Exam (USMLE) and reinstatement to Univ. South Florida Morsani College of Medicine, expunging records due to University's administrative error and refund of tuition for years that adversely impacted plaintiff due to their error in the Year 2009-2010 and 2010-2011 and reinstating her financial aid under US DOE Fedloan program that has been terminated due to irreparable injury suffered due to adverse agency action (Chapter 7 bankruptcy filed on December 9, 2020).

48. Pursuant to Federal Rule Civil Procedure 60(b)(3), the agency made misrepresentations in the final agency decision negating substantial record (a whole record) before the agency in rendering its final agency decision on February 9, 2015, and solely relying on USF staff testimony that was false. The agency ignored her USF MCOM transcripts, NBME test scores, and records that indicated that she completed Year I and II of medical school. She had passed the end of the year final exam, i.e. National Board Medical Exam above the benchmark. The agency solely relied on USF staff false testimony stating that she completed only year I with many deficiencies and absences.

**Subject: OCR Case, No. 04-14-2487 Appeal Update**

Dear respected OCR Office Director,

I am writing to provide an update in correspondence to my Appeal submitted to OCR on April 9, 2015[1], for my case No. 04-14-2487[2]. My appeal was on the basis of erroneous analysis of my case by Ms. Stephanie Pessin on February 9, 2015 due to false statements reported by USF Staff during OCR investigation[3].

> In addition, staff stated that medical students must complete a four-year curriculum in a six-year period of time and it took you four years to complete one year of study. Thus, staff believed it was unlikely that you would have completed the curriculum in the required period of time

professionals can ultimately have a life and death impact. As a result, the MCOM was concerned with your ability to make competent decisions based on your academic performance. In addition, staff stated that medical students must complete a four-year curriculum in a six-year period of time and it took you four years to complete one year of study. Thus, staff believed it was unlikely that you would have completed the curriculum in the required period of time.

**Three evidences are:**

1. USF MCOM Transcript 2009-2012: *demonstrating all courses passed*[11]

2. USF MCOM Comprehensive Basic Science Exam (2nd year Final exam): *passed above benchmark*[12]

3. Letter from USF MCOM Dean of Student affairs to NBME SDS stating that I passed the second year curriculum successfully. [13]

---

[11] Document 1: OCR Appeal dated April 9, 2015

See Appendix F (pages 42-66 and FOIA response, 17-02164-F).

49. Regarding absences, she had two family deaths in the Year 2012-2013 AY to which she received approved excused absences to attend respective funeral ceremonies, however, the agency and USF staff misrepresented the excused absences as failures due to her inability to complete the medical curriculum on time.

50. In an alternative proceeding, the University stated she had passed Year I and II, thus conflicting their statement stated to the agency between September 25, 2014, and February 9, 2015.

51. The agency also failed to investigate or acknowledge her Doctoring II and Evidence-Based Medicine II appeals that was provided to the agency that USF MCOM petition for readmission committee failed to acknowledge under the agency's regulation pursuant to Title II ADA Amendment Act 2008 ("ADAAA").

52. Plaintiff provided to the defendant evidence that the university failed to provide her true grades at the time of failure in EBCR II and Doctoring II courses and used intimidation to create the record needed, i.e. what she should write in her appeal hearings, changed doctoring evaluations at their discretion that would force her to fail the year and lead to academic dismissal. The evidence was provided to the US DOE OCR investigator for case no. 04-14-2487.

53. The defendant did not investigate the appeals for EBCR II and Doctoring II and denied her request for expungement of records that indicated she incorrectly failed but passed with remediation.

54. Petition for Readmission committee continues to hold repeating students who learned of their disabilities for the first time and had to repeat the year and students of Asian race to higher standards than normal student population at the medical school (Appendix J, pp. 84-151). The FOIA response further indicated that additional students were adversely impacted by the committee's lack of training in handling cases under Section 504 and Title II of ADA.

55. Further evidence as described below also indicated Asian American students were repeatedly failed and asked to repeat the year from 2010 to 2015. Further evidence was provided to the agency on October 24, 2018, as a request to reopen the case for finding additional evidence discovered for the University's pretextual violation under Title VI against her Asian race for the alleged complaint of OCR case no. 04-14-2487. From 2012-2015; records discovered at the district court that Asian American students at USF MCOM were held to an alternative standard. Plaintiff was able to compensate and mitigate against her disability in her repeat year, AY 2010-2011 by cultural norms of

working harder than the standard, i.e. giving up "normal activities".. Thus, her disability

was undetected and when the University gave her wrong results of her

neuropsychological evaluation, "i.e. it was unequivocal" from 2010-2012; she was

compensating by sacrificing more than a "standard student". It was only in the second

year of medical school; with new content, her symptoms precipitated enough that led her

to fail and was dismissed in AY 2011-2012. Thus, the cultural norms and other mitigating

factors including technology could not compensate. Whether the University deems that

Asian American students due to their cultural norms are "immune" from any disabilities,

is discriminatory under Title VI. Plaintiff should not be punished if she was "undetected"

due to the cultural norms of sacrificing more than a standard non-Asian American student

to do well in studies. Furthermore, holding Plaintiff to such structural racism standard is

punitive physically, psychologically, and socially under Title II of ADA and Section 504.

56. The headquarter office of US DOE acknowledges the receipt of the additional evidence,

dated October 24, 2018; stated via e-mail that it has been forwarded to the local agency

for review; yet, no action was taken (Appendix B, pp. 3-16; Appendix C, pp. 17-21;

Appendix D, pp. 22-28; Appendix E, pp. 29-41; Appendix F, pp. 42-66; Appendix J, pp.

84-151).

<h3 style="text-align:center">V.      Counts I to V.</h3>

**A. Count I: violation against Administrative Procedure Act, 5 USC 701**

57. Plaintiff realleges all preceding paragraphs.

58. 5 USC Section 701 states that the judicial review of an agency's action is available as

long as no statute precludes such relief and the action is not one committed by the

agency's discretion.

59. Plaintiff has exhausted all administrative remedies and her APA claims have not been afforded review.

60. Declaratory relief is applicable under *ultra vires*, for the agency's arbitrary and capricious removal of the procedural rule in US DOE OCR Manual 2015, section 306 that stated an option to submit the appeal to the Headquarters office to review the agency's findings after the conclusion of its investigation.

61. Without the safeguard in place; the agency's ministerial fact-finding, and legal conclusions lead to an error in reaching the final legal conclusion which was not supported by substantial evidence.

62. Section 10 of the Administrative Procedure Act, 5 USC 701; the legislative statement on the reviewability of administrative action includes "review of provisions". *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955). Plaintiff states that the factual findings in the Agency decision dated Feb 9, 2015, for case no. 04-14-2487; failed to act by applying the provision to Section 504 and Title II of ADA Amendment Act 2008. Thus, the legal analysis was based on ministerial facts and hence, a faulty conclusion. As indicated in the FOIA response 17-02164; US DOE OCR of Atlanta took one sole testimony as to "facts of the case." Critical information and the administrative error from 2010-2012 and retaliatory conducts after discovering the error from 2012-2013 that had led to an aggrieved situation were not disclosed. The ADAAA is a substantive statute that has provided guidelines for the agency to follow in exercising its enforcement powers. *Heckler v. Chaney*, 470 U.S. 821 (1985).

**B. Count II: violation against Administrative Procedure Act, 5 USC 702: Adversely effected by agency action**

63. Plaintiff realleges all preceding paragraphs.

64. 5 USC 702 creates a cause of action in federal court for any person who has suffered legal wrong because of or been adversely affected or aggrieved by, an agency action or failure to act as required by the rule-making statutes. The statute waives the sovereign immunity of the federal government for such a lawsuit, as long as the lawsuit is against a federal agency or federal employee who acted or failed to act in her official capacity or under color of legal authority, and the suit does not request monetary damages.

65. The Court is empowered by 5 USC 702 to hold unlawful and set aside agency action that the Court finds to be not in accordance with the law.

66. Plaintiff has suffered legal wrong pursuant to Title II of ADA and Section 504 of Rehab Act; pretextual to discrimination pursuant to a violation of Title VI (Appendix A-J).

67. Plaintiff pleas preliminary injunction pursuant to 5 USC 702. Plaintiff has filed for chapter 7 bankruptcy, case no. 20-35864. She has been collaterally aggrieved by the final agency decision dated December 16, 2015.

   **C. Count III: Violation against Administrative Procedure Act, 5 USC 704: No other adequate remedy available.**

68. Plaintiff realleges all preceding paragraphs.

69. Section 704 provides that agency action is reviewable by statute and final agency action to which there is no other adequate remedy in a court are subject to judicial review. In *Bennett v. Spear*, the Supreme Court stated that in order for the law of finality to be applied; it must satisfy two conditions: (1) it must mark the consummation of the agency's decision-making process and (2) obligations and rights have been determined to which legal consequences follow. 520 U.S. 154, 177-78 (1997). Under this section, the

plaintiff has exhausted all of her administrative remedies and in compliance with the requirement within the finality of 704. The section makes it clear that unless required by the statute, a party must pursue the required exhaustion requirement to which the plaintiff's MPN obligation under HEA 1965 is applicable pursuant to borrower's obligation under the statute. .....The court has stated that agency action under the APA in this section "includes the whole or part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.  5 USC 551(13).

**D. Count III: violation against Administrative Procedure Act, 5 USC 705: request for injunctive relief: irreparable harm and likelihood of success on merits.**

70. Plaintiff realleges all preceding paragraphs.

71. Section 705 provides injunctive relief pending adjudication of the case to preserve the status or rights affected by the agency's action pending completion of judicial review proceedings. In *Winter v. Natural Resources Defense Council,* the court rendered a "sliding-scale" test to which the preposition stands to which the plaintiff cannot reasonably compensate showing the irreparable injury that follows and showing the likelihood of success the merits. 555 U.S. 7 (2008).

72. HEA 1965 gives express authority to the Secretary of Education, to authorize Title IV program recipient to grant preliminary injunction.

Four elements need to be satisfied for a preliminary injunction to be issued:

**(1) Likelihood of irreparable harm**

    1.  Plaintiff realleges all preceding paragraphs as above

2. The alleged status quo would enable the plaintiff to reinstate her financial aid, continue her last two years of medical education training.

3. Plaintiff has ADHD, to which aggrieved circumstances exacerbate her medical condition.

4. Without the injunction; Plaintiff's financial hardship will persist and she will continue to incur undue hardship to pursue her educational training.

5. She will continue to be discriminated to maintain essential standard of living (i.e. food, essentials, eligible for housing, student loans/financial aid to which she is also collaterally impacted due to loss of earnings and salary).

6. Without the necessary corrections, she will be discriminated against in the future job market within her profession.

7. The time accrual has already collaterally impacted Plaintiff's life:

   1) Plaintiff is undergoing a divorce case no. 20-DCV-278493

   2) Chapter 7 Emergency bankruptcy, case no. 20-35864

   3) Extreme poverty as her storage items is continually under auction, including her car for repossession.

   4) Her extreme position an aggrieved by this instant action subjects her to hate crime.

   5) Due to extreme poverty and hardship as stated above she has to constantly move.

   6) She continually faces indirect retaliation via surveillance for pursuing her rights.

7) Plaintiff is already in aggrieved position as she is from a persecuted class of minority and has ADHD.

8) Each moment of delay is grave enough in the midst of COVID-19 to which the safety of one's life is at stake.

The injunction would reinstate her status quo to which she would safeguard against further collateral damage and pursue meaningful living.

**(2) Likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that is decidedly in the movant's favor:**

1. Plaintiff realleges all preceding paragraphs as above.

2. Plaintiff has continued to maintain her medical training

   1) Completed her EMT-B training

   2) Continues preparing for USMLE

   3) Works within the scope of her profession.

**(3) the balance of hardships tips in [the movant's' favor regardless of the likelihood of success].**

1. Plaintiff realleges all preceding paragraphs as above.

2. There would be no injury to the defendant for enforcing the provisions to the statutes, Title II of ADAAA, Section 504, Title VI and injunction of oversight from Section 306 to appeal to Headquarter office that would serve as a safeguard that the operations of the government at the local level are in compliance.

3. The implementation of the Section 306 rule i.e. the rules and procedure to appeal to the headquarter office as an oversight authority would serve as a

safeguard against environmental and collateral harm for not enforcing Title VI statute.

4.  It serves as a protection against individuals entitled to Title II of ADAAA, Section 504 and its provisions.

5.  There would be no injury to the defendant to use the US DOE Secretary's power under HEA 1965 to reinstate Plaintiff back to medical school as the need for services of physicians is significant due to the shortage of physicians in this nation.

6.  There would be no injury to the Defendant, the injunction would enable plaintiff to complete her medical education, gain employment and be able to pay back Defendant's ED governmental federal loans which are nearly $400,000[8] at this time.

---

[8] Corrections are pleaded in this case for reimbursement: AY 2010-2012 and interest accrual up to this point.



Prepared for

**NAUSHEEN ZAINULABEDDIN**

Personal & confidential

**Date generated:** Dec 22, 2020

Loan Debt                          $399,956

**(4) an injunction that is public interest**

1)  Without the safeguard of the option to appeal to Headquarter office under Section 306 of the OCR Manual; the supervisory role of headquarter office is absent. Thus, the headquarter has no means to ensure that the local agency is enforcing statutes, regulations, policies, and upholding the constitution.

2)  It is of public interest to ensure the department of education and taxpayer's money is being utilized to which the agency is taking

necessary precautions and safety measures in enforcing statutes, upholding the constitution, regulations, and policies.

3) It is of public interest to have grievance procedures that allow schools to have fair, thorough, and impartial investigations before determining responsibility.

4) It is of public interest to the clarity to the rule and procedure that contributes to the due process in the Title II ADAAA, Title VI and, Section 504 due process.

5) It is of public interest to confer protection on 'patent rights' of individuals entitled to Title II's protections. The lack of enforceability and failure to act would severely impact aggrieved individuals.

6) The delay in rendering a meaningful resolution and trauma-induced from the delay will persist to the plaintiff.

7) Collateral impact to the environmental climate of US DOE operations and subsidiary agencies due to lack of enforcement of its statutes, policies, procedures and upholding the constitution.

8) The agency's resolution of closing the investigation due to insufficient evidence contradicts its former operations. See Appendix F to which

   1. Students were reinstated with "academic warning" and not probation upon discovering their disability OCR case no. 05-10-2189 Univ. of Chicago.

2. Expungement of records due to an aggrieved situation, i.e. failure to provide accommodations. OCR case no. 08092091-B, Univ. of Denver.

3. Refund of Tuition due to Univ.'s error in not providing accommodations, OCR case no. 10072030, Univ. of Guam.

4. Reinstated with standards applicable to all students and not held to higher undocumented standards, OCR case no. 05-11-2107 Univ. of Illinois.

**E. Count IV violation against Administrative Procedure Act, 5 USC 706 request for de novo review of final agency action under substantial evidence test of the whole record and arbitrary capricious test pursuant to US DOE OCR administrative authority pursuant to Title II of ADAAA 2008**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—compel agency action unlawfully withheld or unreasonably delayed;

73. Plaintiff realleges all preceding paragraphs.

*74.* The agency made legal conclusions based on one sole testimony from USF staff. Plaintiff provided shortened summary and screen shot of each pertinent document that was relevant from the package provided with evidence to aid the US DOE. To respect an agency's time and resources; documentations and records that was included in the evidence provided with the appeal; to correct the ministerial facts.

***Corrections and records provided (See Appendix E& F, pp. 29-66).***

a) Plaintiff had completed two years of medical school and not one as stated in their fact-finding in the OCR decision dated 02/09/2015. For legal analysis the agency uses the sole perjured testimony from USF Staff.

b) Despite extensive records provided to the agency; it failed to state relevant facts such as the University had lost the neuropsychological evaluation that they had paid for and gave her the wrong results from 2010-2012 (prejudicial error). Agency rendering decision based on an aggrieved and uncorrected prejudicial and pretextual error from 2010-2012.

c) From 2010-2012; she could not benefit from educational training without medications or accommodations and led to failures. When reinstated with an apology, the University punished her for their error and placed her on academic probation, did not refund her tuition from 2010-2012, and held her to an alternative grading standard, i.e. she was expected to pass 20% above the standard pass line and given more assignments than her peers.

d) Agency stated in a letter dated Feb 9, 2015, that the plaintiff had multiple absences and she was not fit to complete the program in the allotted time set by the University. This is an incorrect statement because the plaintiff only requested excused absences that was approved by the University due to deaths in her immediate family. However, the agency erroneously stated that the absences were for reasons attributed to a request for accommodation for her disability.

e) Pretextual evidence related to the OCR case no. 04-14-2487 was provided in a letter to Betsy Devos dated October 25, 2018; Title VI to which Asian American students

were held to an alternative and higher standard, which led to multiple students
repeating the year, failing courses and remediation. The gravity of the situation was
acknowledged and forwarded to the US DOE OCR of Atlanta's office. However, no
action was taken by the Atlanta office.

Section 706 provides that:

**(1)** hold unlawful and set aside agency action, findings, and conclusions found to
be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with
law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory
right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of
this title or otherwise reviewed on the record of an agency hearing provided by
statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by
the reviewing court.
(G) In making the foregoing determinations, the court shall review the whole record
or those parts of it cited by a party, and due account shall be taken of the rule of
prejudicial error.

In support of violation of APA 706 (2)(A-G) in its entirety and APA 701-706 as applicable.

f)  The Department failed to include relevant facts with respect to reaching the reasoning
that supports the legal conclusion. The last discriminatory act that was accepted for
investigation was a denial of Petition for Readmission dated May 28, 2014.  Relevant
facts that are in compliance with the congressional intent of ADAAA 2008 that the
department enforces and would aid in reaching the legal conclusion were withheld,
omitted, and led to prejudicial error.

**Facts that should have been included that would have led to appropriate legal analysis and was provided to the agency included:**

1) The University denied her request for accommodations in March 2010

2) The University advised her that without a neuropsych evaluation and only the diagnosis that the University had given by their protocol at the time was insufficient; thus, she would have to pay $3000 for the exam. Plaintiff disclosed that she could provide a letter from a physician from USF Counseling Center and their results from their battery of tests. However, she stated that would not be enough and she had to pay $3000 for a full neuropsychological evaluation. Without the money and resources to meet USF MCOM's requirements as stated to her by the Associate Dean of Student of Affairs, she was advised to finish off the year. The Associate Dean stated to her that if she fails, she would have to take the neuropsych exam paid by the medical school. Associate Dean of Student of Affairs he will receive the neuropsych evaluation from the evaluator and if the report shows she has a diagnosis that supports the need for accommodations; then her request in the form of a neuropsych evaluation provided to Student of Affairs would suffice as a request and the next appropriate steps would be given by USF MCOM the Student of Affairs. Plaintiff had signed the release forms for the neuropsych evaluator to release the results to the USF MCOM's Student of Affairs office in August 05, 2010. This protocol for requesting accommodation is indicated in the USF MCOM Handbook.

3) The neuropsych evaluation was taken and paid for by the University, dated 08/05/2010. The findings indicated the need for accommodations. However, the University stated that they had lost her neuropsychological evaluation, thus had given her erroneous results from 2010-2012. Due to that, she did not know she had ADHD, needed accommodations nor medications. Though, without knowledge of her diagnosis; she was able to compensate in the repeat year of the first academic year of medical school with the new curricula changes, AY 2010-2011; however, she ended up failing the second year of medical school in AY 2011-2012.

4) She was dismissed from USF MCOM in Jan 2012. In support of her appeals, she requested a copy of the neuropsych evaluation that the University paid and conducted as per the stipulation stated in the APRC Letter dated June 2010. The University provided her the neuropsychological evaluation dated 08/10/2020 on Feb 8, 2012, with an apology for giving her erroneous results from the report. However, upon reinstatement her grades were not expunged, tuition and interest were not reimbursed, and she was placed in academic probation standing. The error was also not reported to US DOE Fedloan Servicing as per contractual duties as an acting agent for the department (See Petition for Readmission Letter, Appendix G, pp. 80-176).

75. Despite providing the agency the medical records, transcripts, documentations and evaluations; the relevant facts were omitted and sole reliance on scintilla evidence as the basis of legal conclusion made.

76. Section 706 sets forth the scope of review of the agency's action on the question of law, statutory question, and interpretation. In *Chevron,* the court held that it depends on a number of factors and deference to the authority. In *Christensen v. Harris,* the Supreme Court held that precedence weighs on the congressional intent of the statuary meaning without deference to the agency. 529 US 576 (2000). The purpose of Title II of ADAAA 2008 is enforced by federal administrative agencies that disburse funding ("administrative enforcement scheme") and by the courts through private litigation ("judicial enforcement scheme"). The DOE is authorized to promulgate rules, regulations, and orders, and may use... any means authorized by law," including the termination of funding to effectuate the statute's restrictions. *Davis v. Monroe Cty, Bd. Of Educ.,* 526 U.S. 629, 638-39 (1999). Thus, agency *inaction* in promulgating its statute in its enforcement proceedings would be ineffective[9].

77. In *Chevron,* the issue was raised if the statute is silent or ambiguous regarding the issue, and if the agency has acted pursuant to express or implemented delegation of authority; then the weigh is whether the agency answer is based on permissible construction of the statute.

78. Furthermore, the section reviews under the arbitrary, capricious and abuse of discretion standard. The application of the arbitrary and capricious test replies on evaluating the agency actions to which it relied on:

---

[9] Harrison, J. (2020). Section 706 of the Administrative Procedure Act Does not Call for Universal Injunctions or other Universal Remedies. Yale Journal on Regulation Online Bulletin. Retrieved from: https://digitalcommons.law.yale.edu/jregonline/1

1. Reliance on impermissible factors,

2. No reasonable relationship to statutory purposes or requirements,

3. Inadequate factual premises,

4. Unsupported by any reasoning or based on seriously flawed reasoning

5. Failure to consider key aspects of the issue presented,

6. Unexplained inconsistency with prior actions,

7. Failure to consider alternative solutions,

8. Failure to respond to relevant arguments or comments, or

9. Disproportionate sanctions.

79. Under this section, facts are reviewed under the substantial evidence test to which the determination is reviewed on the record of an agency required by statute.  The factual determination is also subject to the arbitrary or capricious standard. In *Dolcin Corp v. FTC*, the court indicated that section 706 contains the rule of harmless error; and it will not overturn an agency decision unless the error was harmful or prejudicial. 219 F2d 742 (D.C. Cir. 1954).

80. The APA provides a court review of the procedures and determines whether there was a material error either impaired fairness of the proceedings or the correctness of the action. APA is a strict review of the way an agency makes a decision, strict review over whether it was a lawful, less strict review over whether it is right and, virtually no review.

81. Agency allows the court to set aside final agency action that is arbitrary, capricious, or an abuse of discretion or short of statutory right, including action that is unlawfully withheld or unreasonably delayed. Justice Sutherland gave further clarification as to "set aside" to

which congressional intent was not exercised by the agency. In *Massachusetts v. Mellon*, Justice said,

> We have no power per se to review and annul acts of Congress on the ground that they are unconstitutional....[T]he power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of the enforcement of a legal right. 262 U.S. 447, 488 (1923).

82. Section 706(1) can also direct the agency to claims that are brought under the agency who took partial, allegedly inadequate action towards a congressionally mandated goal. Courts have held that partial action and "half steps" towards a congressionally mandated goal constitute a failure to act. *Montana Wilderness Associaton v. United States Forest Service* 314 F.3d 1146 (9th Cir. 2003).

83. Agency action is defined to include "the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act, section 551(13). Courts have focused on omissions, signaling a change from the earlier interpretation of the scope of section 706, judicial reviewing; to raising the question of how much action could be still considered "inaction" under section 706(1). Thus, the threshold question is whether the agency had a clear statutory duty to act and whether the agency's omissions constitute a failure to comply with that duty.

84. Agency order must be reversed because it did not follow established principles of law when it discarded findings of its hearing officer which were supported by competent evidence. Courts have held that reversal is mandated when a procedural error is material to the fairness of the proceedings. The decision to not change the status quo is deemed as a final agency action under APA, as constituting as certain inaction equated to agency

action. *City of Chicago v. United States*, 396 U.S. 162, 166-167, 90 S. Ct. 309 (holding that agency decision not to take action was not inaction but rather a decision on the merits resulting a reviewable agency action).

85. When an agency fails to carry out a mandatory, nondiscretionary duty either by an established deadline or within the reasonable time period, this failure constitutes final agency action, "when if the agency may have hypothetically carried out its duty through some 'nonfinal action'. The concept of administrative discretion should not be stretched to exempt an agency from review where it has ignored congressional mandate. The Louis Jaffe stated that nondiscretionary or ministerial action is when the "legally irrelevant or forbidden considerations have determined the decision[10]."

86. Section 706(2)(E) of the APA provides that fact-finding in a formal administrative adjudication could be overturned by courts if the factual determination is unsupported by substantial evidence. *De novo* determinations of the question of fact are provided by Article III courts that are provided by the administrative deprivations to core private rights to "life, liberty, or property".

87. In *ICC v. Union Pacific Railroad Co.*, the court stated that "the courts will not examine the facts further than to determine whether there was substantial evidence to sustain the order." In *Bates v. Colvin*, the court held that factual determination is upheld if a reasonable factfinder could have reached them to which the substantial evidence is relevant as to a reasonable mind. Might accept as adequate to support a conclusion. 736

---

[10] Louis L. Jaffe (1965). Judicial Control of Administrative Action 181 . Little, Brown and Company, Boston.

F. 3d 1093, 1098 (7th Cir. 2013). Section 706(2)(e) must be based on the whole record and supported by substantial evidence.

88. An appeal provided to the Office Director of US DOE OCR of Atlanta including factual errors determined by the agency that had detrimental impact constituted as ministerial acts for solely relying on one sole testimony. Evidence provided to the agency was extracted to provide evidence and references (Appendix F, pages 42-66).

## Deliberate indifference

89. Supreme Court's decision established that an institution could be subject to monetary damages when it exhibited "deliberate indifference" that subjected a student to aggrieved action, that action must take placed in the context subject to control and that liability of the violation is so severe, pervasive, and objectively offensive that it can be said to deprive victims of access to educational opportunities or benefits provided by the school." Davis, 526 U.S. at 644-45, 640. The liability in damages also falls into the institution, when an appropriate person who "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination," has actual knowledge of discrimination and fails to adequately respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). The conduct must be serious that it adversely affects a student's ability to participate in or benefit from the school's program.

## PRAYER OF RELIEF

90. Request for Arbitration or Mediation with the defendant(s) for expedited adjudication of this instant case (if possible).

91. Judicial review of final agency action dated Feb 9, 2015, appeal decision December 16, 2015 and FOIA response 17-02164-F based on the whole record that was before the agency. The request of the whole record from the agency and further additional evidence provided in support to reopen the case as deemed appropriate, OCR case no. 04-14-2487 for the letter dated October 24, 2018, to US DOE Secretary of Education, Betsy Devos. The whole record of Fedloan Discharge no. 7 from Fedloan servicing dated March 20, 2017. The receipt of the record provided to the agencies is included Appendix I. The letter dated October 24, 2018, final agency decision dated Feb 9, 2015, and appeal decision dated December 16, 2015 is included in Appendix A to K.

92. Emergency preliminary Injunctive relief for reinstatement to Univ. of South Florida Morsani College of Medicine.

93. Grant eligibility to take USMLE and pursue third-year rotations without placement on academic probation standing.

94. Expungement of academic records for University's error in Year I (2009-2010) and Year II (2011-2012) and removal of remediation notation for EBCR II and Doctoring II in AY 2012-2013.

95. Tuition reimbursement for 2009-2010 and 2011-2012 and adjusted interests accrued since 2009 and reinstatement of Fedloan Servicing financial aid to complete her medical education (Appendix H, pp. 79-80; Appendix I, pp. 82-83).

96. The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake is more than $75,000, not accounting for interest and costs of the court because the plaintiff seeks reimbursement back to her U.S. DOE Fed loan Servicing account for medical school tuition of Year I and II, during the academic year 2009-2010

and 2011-2012, respectively, including accrued interest and collateral damages that this honorable deems appropriate at its discretion. Thus, amounting to greater than $90,000 for Year I and II, not including interest accrued. See Appendix H, pp. 79-80 and Appendix I, pp. 82-83.

Respectfully

Jan 26 2021

Alia Merchant

4409 West Varn Avenue

Tampa, FL 33616

AliaMerchant51@gmail.com